Darin DANIEL and Dana Honeycutt-Daniel, On Behalf of
Themselves and the Citizens, Residents, Taxpayers, and
Inhabitants of White County, Arkansas *v.* The Honorable Glen
JONES, County Judge of White County, Arkansas, et al.

97-634                                        966 S.W.2d 226

Supreme Court of Arkansas
Opinion delivered April 9, 1998

[Petition for rehearing denied May 14, 1998.*]

---

\*  THORNTON, J., would grant.

*Nichols, Wolff, Ledbetter & Campbell,* by: *H. Gregory Campbell* and *Mark W. Nichols,* for appellants.

*Gill Law Firm, a professional association,* by: *C. Tad Bohannon,* for appellees (White County Judge and Quorum Court Members).

*Lightle, Beebe, Raney, Bell & Hudgins,* by: *Mike Beebe* and *Donald Raney; Williams & Anderson,* by: *Leon Holmes* and *J. Madison Barker,* for appellees (Mayors of White County Cities).

DONALD L. CORBIN, Justice. This is a class-action suit claiming an illegal exaction. Appellants Darin Daniel and Dana Honeycutt-Daniel, on behalf of themselves and the citizens, residents, taxpayers, and inhabitants of White County, appeal the judgment of the White County Chancery Court dismissing their claim against Appellees, the White County judge, members of the quorum court, the county treasurer, the mayors of the various cities in White County, and the State of Arkansas. Appellants' claim concerns a county ordinance passed by a majority of voters that imposed a countywide one-percent (1%) sales tax. The ballot reflected that the revenues generated from the sales tax would be used for five designated purposes. It is not disputed that the tax revenues are being used for purposes other than those stated on the ballot. On appeal, Appellants argue that using the tax proceeds for purposes other than those designated on the ballot violates Article 16, § 11, of the Arkansas Constitution of 1874 and Ark. Code Ann. § 26-74-308 (Repl. 1997). Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(1) & (17)(vi), as the issues raised require our interpretation of the Arkansas Constitution and acts of the General Assembly. We find merit to Appellants' argument and reverse.

The relevant facts are not in dispute and were stipulated to by all parties. On July 19, 1989, the White County Quorum Court adopted Ordinance No. 89-14 to set a special election to submit for the voters' approval the levy of a one-percent (1%) countywide sales tax. Ordinance No. 89-14 provided in part:

> BE IT ENACTED BY THE QUORUM COURT OF THE COUNTY OF WHITE, STATE OF ARKANSAS: AN EMERGENCY ORDINANCE TO BE ENTITLED: AN ORDINANCE TO PLACE BEFORE THE VOTERS OF WHITE COUNTY A PROPOSAL FOR A COUNTY WIDE ONE PERCENT (1%) SALES TAX AND FOR OTHER PURPOSES.

SECTION 1.

That pursuant to Act 991 of 1981 the General Assembly of Arkansas empowered the various Quorum Courts of the respective Arkansas counties with the authority to call an election for the levy of a one percent (1%) county wide sales tax. That said election shall be held within one hundred and twenty (120) days of the ordinance calling for the election. ([Ark. Code Ann. §] 26-74-307)

SECTION 2.

That the County is in need of additional funding to maintain the present level of services now provided to the people of White County and to enable the County officials to plan for future growth and services and solid waste management.

SECTION 3.

That the ballot title shall be as follows:

[ ] "For adoption of a one percent (1%) sales tax within White County."

[ ] "Against adoption of a one percent (1%) sales tax within White County."

On August 15, 1989, the county quorum court adopted Ordinance No. 89-17 as an amendment to Ordinance No. 89-14. Ordinance No. 89-17 reflected in pertinent part:

Be it enacted by the Quorum Court of the County of White, State of Arkansas: An Ordinance to be entitled:

An Ordinance to designate the use of the revenue generated by the 1% sales tax that will appear on the Ballot during a Special Election Tuesday August 22, 1989.

SECTION 6. That it is the consenses [sic] of the White County Quorum Court, that revenues generated from the imposition of the tax be divided as follows:

A. 50% County Road
B. 25% County General
C. 5% Volunteer Fire Departments
D. 10% Non-Mandated Services
E. 10% Capital Improvements

A special election was held on August 22, 1989, wherein the voters were presented with the ballot for Ordinance No. 89-17, which read in pertinent part:

### COUNTY SALES TAX

An ordinance to adopt a one percent (1%) sales tax within White County.

The sales tax money is to be used as follows:

50%  for County Road
25%  for County General
5%  for Volunteer Fire Departments
10%  for Capital Improvements
10%  for Non-Mandated Services (includes Extension Office, Program for Aging, County Library and Veterans Office)

FOR adoption of a one percent (1%) sales tax within White County

AGAINST adoption of a one percent (1%) sales tax within White County

The voters approved the measure. White County began levying and collecting the sales tax on October 1, 1989, and is currently doing so. Since October 1, 1989, the State of Arkansas has received the tax monies collected and remitted the funds to the county and its cities on a per capita basis. White County receives a check each month from the State Treasurer for approximately 45.50% of the sales tax collected. Upon receipt of the county's share of the revenues, the county treasurer prepares a report allocating those funds as set out in the foregoing ballot. The remaining 54.50% of the sales tax monies, however, is distributed by the State Treasurer among the cities on a per capita basis. The cities then use their shares of the tax proceeds for their own purposes. Neither Ordinance No. 89-14, Ordinance No. 89-17, nor the actual ballot disclosed to the voters that the cities within the county would receive a portion of the sales tax proceeds, or that such proceeds would be used for purposes other than those designated in Ordinance No. 89-17 and the ballot. Nor do the ballot and ordinances reveal the method by which the sales tax is to be collected and distributed to the various governmental entities. The ordinances and the ballot further do not mention

that the State Treasurer would deduct the sum of three percent (3%) from the sales tax collected as a service fee, pursuant to Ark. Code Ann. § 26-74-313 (Repl. 1997).

On June 22, 1995, Appellants filed their complaint pursuant to Article 16, § 13, of the Arkansas Constitution, requesting that the trial court declare the levy and collection of the one-percent (1%) sales tax an illegal exaction. Appellants requested further that the trial court grant an injunction to prevent county officials from collecting the sales tax and a mandatory injunction ordering the refund and return of taxpayer monies illegally exacted, after apportionment of reasonable attorney's fees pursuant to Ark. Code Ann. § 26-35-902 (Repl. 1997). Subsequent amended complaints were filed, wherein Appellants claimed, among other things, that the sales tax monies were being levied and collected in violation of Article 16, § 11, of the Arkansas Constitution and section 26-74-308. Specifically, they contended that because the ballot and Ordinance No. 89-17 declared particular uses for the revenues generated from the sales tax, all such revenues must be spent only for those designated purposes, and for nothing else. They claimed that because the ballot and ordinances failed to disclose that portions of the sales tax proceeds would be distributed to the cities, it was illegal to give them any share of such proceeds.

Appellees filed a motion to dismiss the complaints pursuant to ARCP Rule 12(b)(6), insisting that the sales tax was being collected in accordance with Arkansas law and that Appellants had failed to state sufficient facts upon which relief could be granted. They asserted that Act 991 of 1981, now codified at Ark. Code Ann. §§ 26-74-301 to -314 (Repl. 1997), requires that portions of the sales tax collected be distributed to the cities within the county levying the tax. They contended that Act 991 does not contain any exceptions to the State Treasurer's statutory duty to distribute portions of the tax to the cities, and that the county imposing the tax has no responsibility or control over the distribution of the proceeds. Additionally, Appellees asserted that Act 991 provides that cities within the county may spend their shares of the tax revenues for any purpose for which their general funds or the county's general funds may be used. They argued

further that the designation on the ballot of how the revenues generated from the tax would be spent referred only to the way in which the county's share of those revenues would be spent, and that this should have been evident to the voters by the fact that the ballot referred to such uses as "County Road" and "County General."

The trial court agreed with Appellees and granted their motion to dismiss. The trial court ruled that Act 991 is the authority by which this sales tax was implemented, and that just as the Act enables the county to levy such a tax, it also limits the power of the county to undertake such action. The court found that Act 991 directs the State Treasurer to distribute the sales tax collected to the county and the cities on a per capita basis after the State Treasurer deducts a three-percent (3%) service charge. *See* section 26-74-313. The trial court found further that the State Treasurer had fulfilled such statutory duties in this particular instance.[1] The trial court ruled that the designation on the ballot by the quorum court of the proposed uses of the tax revenues, as provided in section 26-74-308(c), pertained only to the county's share of the revenues, and that the designation by the county as to its intended uses of the revenues could not bind the cities as to how they must use their shares of the revenues. To allow the county to control the cities' shares, the trial court reasoned, would empower the counties beyond that authority specifically delegated to them by the General Assembly.

The trial court also found that section 26-74-308(c), included in Act 278 of 1983, makes no reference to the cities or state and speaks in terms of proceeds derived from the tax, rather than revenues collected. Accordingly, the trial court reasoned that such a reference is applicable only to the revenues received by the county *after* the State has deducted its appropriate percentage and the cities have received their respective portions. The trial court found that Act 991, as amended and reenacted, is the later

---

[1] On appeal, Appellants do not dispute that the State is to receive three percent of the sum collected from the tax as a fee for its services. This court has previously upheld the State's right to receive such fee. *See Porter v. McCuen*, 310 Ark. 562, 839 S.W.2d 512 (1992) (holding that such allocation is mandated under existing law).

enactment of law and that it controls as to any conflict with Act 278. The trial court ruled that there was no violation of Article 16, § 11, as the White County sales tax is being distributed according to statute in pursuance of law.

Appellants now contend that the trial court erred in dismissing their claim, as they assert that the collection of the county sales tax revenues and their distribution to the cities for purposes other than those designated on the ordinances and ballot, violates Article 16, § 11, of the constitution and section 26-74-308. Appellants argue that the voters of White County who approved the sales tax were entitled to rely upon that information provided on the ballot as the final word of how the revenues would be spent. We agree.

■■ Before reaching the particular arguments raised by Appellants, we must determine whether the chancellor's order was in fact a dismissal under Rule 12(b)(6) or a grant of summary judgment as provided in Rule 56. When considering a Rule 12(b)(6) motion to dismiss, the trial court must treat the facts as true and view them in the light most favorable to the party who filed the complaint. *Oldner v. Villines*, 328 Ark. 296, 943 S.W.2d 574 (1997). The trial court must not look beyond the complaint unless it is treating the motion as one for summary judgment. *Id.* The trial court must not lend consideration to any factual conclusions reached through the arguments of counsel and exhibits and may not base its decision on allegations contained in the briefs and exhibits. *Id.* Here, there were no questions of fact to be determined. The parties to the action agreed upon and stipulated to the relevant facts and exhibits, thereby acknowledging the truth of such facts. The chancellor clearly treated the motion as one to dismiss for failure to state facts upon which relief could be granted. Thus, upon review, we also must construe the complaint liberally, accepting the facts alleged as true and viewing them in a light most favorable to Appellants. *Brown v. Tucker*, 330 Ark. 435, 954 S.W.2d 262 (1997).

Act 991 is a comprehensive delegation by the General Assembly to the county quorum courts of the authority to impose a countywide one-percent (1%) sales tax. Sections 26-74-307 and

-308 provide for the precise method of calling for an election to levy such a sales tax and the required form of the ballot. Section 26-74-308(c) provides:

> (c) The ballot may also indicate designated uses of the revenues derived from the sales tax and, *if the tax is approved, the proceeds shall only be used for the designated purposes.* [Emphasis added.]

Section 26-74-313 provides in pertinent part:

> (b) . . . any sales tax collected by the director under this subchapter on behalf of any county shall be deposited with the State Treasurer in trust and shall be kept in a separate suspense account.
>
> . . . .
>
> (d)(1) *The State Treasurer shall transmit to the treasurer or financial officer of each city and county their per capita share,* after deducting the amount required for claims, overpayments, and bad checks, as certified by the director.
>
> . . . .
>
> (3) Transmittals shall be made at least quarterly in each fiscal year. *Funds so transmitted may be used by the cities and counties for any purpose for which the city's general funds or county's general funds may be used. Before transmitting these funds, the State Treasurer shall deduct three percent (3%) of the sum collected as a charge by the state for its services specified in this subchapter*[.] [Emphasis added.]

Appellants rely on section 26-74-308(c), as well as Article 16, § 11, of the constitution, for their argument that the tax currently being levied by White County is an illegal exaction; they contend that because the ballot reflected only five designated purposes for the tax revenues, any other use of the revenues is in conflict with that section and the constitution.

Appellees contend that sections 26-74-308(c) and 26-74-313 can be read harmoniously, if we adopt the reasoning of the trial court that the designated uses or purposes that may be declared on the ballot, as provided in section 26-74-308(c), refer only to the county's use of its share of the tax revenues, not to the whole of the sales tax collected. They contend that the legislature has permitted the county to designate specific purposes on the ballot, but that it has nonetheless required the State Treasurer to distribute the

tax revenues to the county and its cities on a per capita basis. To accept Appellants' reading of the statutory provisions, Appellees urge, would completely defeat the entire taxation scheme designed by the General Assembly.

■ We initially turn to the issue of whether the sales tax currently being levied and collected is an illegal exaction in violation of Article 16, § 11, of the Arkansas Constitution. For purposes of interpreting our constitution, we have made clear that when the language of the provision is plain and unambiguous, each word must be given its plain, obvious, and common meaning. *Oldner*, 328 Ark. 296, 943 S.W.2d 574. "Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision." *Foster v. Jefferson County Quorum Court*, 321 Ark. 105, 108, 901 S.W.2d 809, 810 (1995). Article 16, § 11, provides:

> No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; *and no moneys arising from a tax levied for one purpose shall be used for any other purpose.* [Emphasis added.]

■ ■ In *Oldner*, we stated that the express intent of that constitutional provision "is for the object to be stated so that the tax revenues cannot be shifted to a use different from that authorized." 328 Ark. at 305, 943 S.W.2d at 579. It is the use of the funds for a different purpose that constitutes an illegal exaction. *Id.* (citing *Hartwick v. Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989); *Bell v. Crawford County*, 287 Ark. 251, 697 S.W.2d 910, *cert. denied*, 475 U.S. 1120 (1985)). Where a primary purpose of the tax could not be accomplished, but the collection of the tax was continued, this court held that an illegal exaction had occurred. *Hasha v. City of Fayetteville*, 311 Ark. 460, 845 S.W.2d 500 (1993). Similarly, in *Oldner*, we held:

> When a tax is enacted by the General Assembly or approved by a vote of the people without the statement of a purpose, the resulting revenues may be used for general purposes. We fail to see how the voting public could be misled on this point. *It is only when a diversion of tax revenues occurs from a specific purpose that has been authorized to an unauthorized purpose that an illegal exaction*

> *occurs*. We have no doubt that that is the evil sought to be reme-
> died by Article 16, § 11.

328 Ark. at 305, 943 S.W.2d at 579 (emphasis added). Whether the governmental entity levying and collecting the tax intended to put the revenues to "good use" is of no consequence, so long as the funds are being spent on any purpose other than those speci-fied on the ballot. *Hartwick*, 300 Ark. 502, 780 S.W.2d 531.

Here, there is no dispute that the revenues collected from the sales tax are being spent by the cities of White County for pur-poses other than those five uses designated on the ballot. There is no allegation that the county has applied any of its share of the revenues to any other purposes other than those designated on the ballot. The question then becomes whether the voters were otherwise put on notice of the fact that the cities, as well as the State, would receive their portions of the revenues as set out in section 26-74-313.

Appellees contend that the cities' portions of the revenues are being spent in accordance with the purposes set out in section 26-74-313(d). They argue that this court should look to that section, as well as the remainder of Act 991, to determine whether the tax revenues are being spent appropriately pursuant to Article 16, § 11. We disagree with this argument.

We held in *Oldner*, 328 Ark. 296, 943 S.W.2d 574, that for purposes of construing Article 16, § 11, the "law imposing the tax" is the levying ordinance. Accordingly, we look to the levying ordinance, rather than the enabling legislation, in determining whether the expenditures of the tax revenues are authorized. Here, the levying ordinance, Ordinance No. 89-17, declared five specific purposes for the tax revenues, the same five purposes that were subsequently designated on the ballot. The voters of White County were entitled to rely upon the information provided to them in the levying ordinance and the ballot when casting their votes; hence, any use of the revenues for purposes other than those provided constitutes an illegal exaction. This conclusion is consis-tent with this court's long-held position that the ballot title is the final, definitive statement to the voters as to that which they are being asked to decide.

In *Arkansas-Missouri Power Corp. v. City of Rector,* 214 Ark. 649, 654, 217 S.W.2d 335, 337 (1949), this court held that it is to the title of the ordinance and the ballot title "that the electors had the right to look to ascertain what they were asked to approve[.]" This court held further that "[t]he ballot title is the final word of information and warning to which the electors had the right to look as to just what authority they were asked to confer[.]" *Id.* Correspondingly, in *Christian Civic Action Comm. v. McCuen,* this court observed:

> It has long been regarded as axiomatic that the majority of voters, when called upon to vote for or against a proposed measure at a general election, will derive their information about its contents from an inspection of the ballot title immediately before exercising the right of suffrage. This, indeed, is the purpose of the ballot title.

318 Ark. 241, 245, 884 S.W.2d 605, 607 (1994) (citations omitted). In *Ragan v. Venhaus,* 289 Ark. 266, 711 S.W.2d 467 (1986), upon which Appellants rely, this court held that "[t]he citizens are entitled to be informed by plain language about what they are voting, and this court has long insisted on that standard." *Id.* at 271, 711 S.W.2d at 469. Mere references to acts of the legislature in a ballot title were insufficient to inform voters about what it was they were voting, as "[t]he *voters do not have ready access to the acts of the legislature,* and we cannot presume they know what repealing effects a later act may have on a former act." *Id.* (emphasis added).

We are thus not persuaded by Appellees' argument that the White County voters could have known, ostensibly from an inspection of the statutory law, that the cities would receive their per capita shares of the tax revenues as set out in section 26-74-313. Appellees rely on this court's holding in *City of Little Rock v. Waters,* 303 Ark. 363, 797 S.W.2d 426 (1990), in support of this argument. At issue in that case was Act 31 of 1987, which provided that in all counties where the voters had approved a sales tax, pursuant to Act 991 of 1981 or Act 26 of the First Extraordinary Session of 1981, a use tax of equal rate would be imposed automatically, without requiring the approval of the voters. This court upheld the imposition of the use tax on the grounds that the General Assembly has the inherent authority to impose a tax and that there is no fundamental right of the citizens to vote on that issue.

Appellees argue that the holding in *Waters* is applicable here, as they contend that in both cases, the complaint is that the voters who approved the sales tax were not informed of the implications of corresponding legislative enactments.

We decline to follow the reasoning of *Waters*. Instead, we conclude that the holding in *Waters* is incorrect, and we overrule that decision to the extent that it conflicts with our holding today. We now embrace the reasoning expressed by the dissent in that case, namely that the voters' right to be fully informed of the matter for which they are casting their votes is paramount. In other words, where the General Assembly has established the right of the voters to approve the imposition of a tax, any consideration of the legislature's general power to tax is secondary to the voters' right to full disclosure of the nature of the tax and its proposed purposes. "[T]he General Assembly only authorizes the imposition of the tax. It is imposed by a vote of the people who will pay it." *Waters*, 303 Ark. at 373, 797 S.W.2d at 432 (Newbern, J., dissenting).

Applying such reasoning to the present case, we conclude that the White County voters' right to full disclosure as to how the tax revenues would be spent outweighs any consideration of the General Assembly's authority to establish the particular scheme of distribution of those revenues. Both the levying ordinance and the ballot reflected five designated purposes for which the sales tax revenues would be used. The voters were instructed by the ballot that if the one-percent (1%) sales tax was approved, all the revenues generated would be spent in those five areas. The voters were not specifically informed, nor could they be presumed to have known, that the legislative act that empowered the county to levy such a tax also provided that the cities would be given their per capita shares of the revenues and would be allowed to spend the money for purposes other than those designated on the ballot.

Accordingly, any use of the sales tax revenues for purposes other than those designated by the levying ordinance and the ballot is in violation of Article 16, § 11, of the Arkansas Constitution and constitutes an illegal exaction. We thus reverse the ruling of the trial court and remand for further proceedings consistent with this opinion.