George WILLIAMS and Dorothy Cox *v.* CITY OF
FAYETTEVILLE, Arkansas; Advertising and Promotion
Commission of the City of Fayetteville, Arkansas; Bekka
Development Co.; Nabholz Construction Corporation; and
Wittenberg, Delony & Davidson, Inc.

01-211                                              76 S.W.3d 235

Supreme Court of Arkansas
Opinion delivered May 16, 2002

*The Evans Law Firm, P.A.*, by: *Marshall Dale Evans* and *Karen Pope Greenaway*, *The Hirsch Law Firm, P.A.*, by: *E. Kent Hirsch*, and *Pettus Law Firm, P.A.*, by: *E. Lamar Pettus*, for appellants.

*Bassett Law Firm*, by: *Woody Bassett* and *James M. Graves*; and *Kit Williams*, for appellee City of Fayetteville.

*Davis, Wright, Clark, Butt & Caruthers, PLC*, by: *Constance G. Clark* and *William Jackson Butt*, for appellee Bekka Development Co.

*Boyer, Schrantz, Rhoads & Teague*, by: *Ronald L. Boyer*; and *Friday, Eldredge & Clark*, by: *John Dewey Watson*, for appellee Nabholz Construction Corp.

*Conner & Winters, PLLC*, by: *John R. Elrod* and *Terri Dill Chadick*, for appellee Wittenberg, Delony & Davidson, Inc.

JIM HANNAH, Justice. This case involves the question of whether a bond measure presented to the public for approval pursuant to Amendment 62 of the Arkansas Constitution may not only approve issuance of bonds but may also act as a restraint on a municipality's ability to expend other funds on the same project. This case also presents questions of illegal exaction in expenditure of general funds.

Appellants present three issues in their brief. The first issue is whether the ballot measure on the bond issue set the total amount of money that could be spent by the City in building a civic center, commonly called the Town Center. The second issue is whether use of the city's general fund, derived in part from city sales taxes, for construction of the Town Center constitutes an illegal exaction in that the city sales tax was only to be used for

improvement of municipal services and financing of the same. The third issue is whether use of turn-back funds from the county sales tax that are in the general fund constitutes an illegal exaction in that they were only to be used for resolving a county financial crisis of 1981.

More specifically, appellants allege that by presenting a ballot measure to the public whereby the City of Fayetteville proposed to fund its debt on the construction of the Fayetteville Town Center by the issuance of bonds, it simultaneously committed itself to build the Town Center for the amount of revenue raised by the bonds.

We hold that neither the ordinance nor the ballot title speaks to anything but issuance of bonds under Amendment 62 as a means of financing debt and that no restraint on City spending was created thereby. We hold that the use of the city sales-tax revenue to pay a portion of the Town Center costs is not an illegal exaction. We also hold that there was no proof that the City was using County sales tax turn-back funds to pay for any of the Town Center costs.

*Facts*

In 1977, the City passed Ordinance 2310, which levied a 1% hotel, motel, and restaurant tax. The taxes generated were administered by the Advertising and Promotion Commission, which was created for that purpose. The Commission used the tax funds to promote the city, to encourage tourism, and to develop a convention center for the city. To this end, the Commission passed a resolution, earmarking $1,000,000 for the development of a convention center, which was accumulated by 1997.

In 1997, the City decided to move forward on construction of a convention center and calculated the amount of debt the tax revenues generated by the 1% hotel, motel, and restaurant tax could support to be $6,950,000. The City then passed Ordinance 4038 and set an election for a decision by the voters on whether to issue $6,950,000 in bonds under Amendment 62 of the Arkansas Constitution to finance debt on the construction of the convention center. By this point, the convention center was being called

the Fayetteville Town Center. The measure passed. The City then had a total of $7,950,000 to build the Town Center.

On August 3, 1999, the City entered into construction contracts on the Town Center in the amount of $7,346,408. On August 4, 1999, this lawsuit was instituted claiming that the ballot measure under Amendment 62 limited the total sum the City could spend on construction of the Town Center to the $6,950,000 of the bond measure.

Some additional funds beyond the 7.9 million dollars available were needed for further contracts, and the City determined to pay for them first with parking fees and the balance with general funds. It appears that the total cost of the Town Center was about 8.4 million dollars.

*Amendment 62*

Appellants argue that the ordinance and ballot title on the bond measure to finance the debt on the Town Center project not only authorized issuance of the bonds, but also by its wording limited the expenditures on the project to the amount of the bonds. This issue does not involve a claim of illegal exaction. The parties agree that there was no diversion of funds by way of the bond issue and, therefore, no issue of illegal exaction. *Maddox v. City of Fort Smith*, 346 Ark. 209, 56 S.W.3d 375 (2001); *Oldner v. Villines*, 328 Ark. 296, 943 S.W.2d 574 (1997).

■ ■ In *Hasha v. City of Fayetteville*, 311 Ark. 460, 845 S.W.2d 500 (1993), this court stated:

> Amendment 62 to the Constitution of Arkansas was approved at the November 1984 general election. It is entitled "Local Capital Improvement Bonds" and repealed Amendments 13, 17, 25, and 49. Section 1(a) of Amendment 62 authorizes municipalities to issue bonds, upon approval by the voters, for capital improvements of a public nature and authorizes an ad valorem tax to repay the capital improvement bonds. The same section, 1(a), permits other taxes to be used to repay capital improvement bonds if authorized by the General Assembly.

*Hasha*, 311 Ark. *at* 463.

Arkansas Code Annotated § 14-164-302 (Repl. 1998) provides additional clarity:

> The people of the State of Arkansas by the adoption of Arkansas Constitution, Amendment 62 have expressed their intention to provide county and municipal governments expanded powers and authority with respect to the creation of bonded indebtedness for capital improvements of a public nature and the financing of facilities for the securing and developing of industry, and have empowered the General Assembly to define and prescribe certain matters with respect to the exercise of this power and authority. To that end this subchapter is adopted to enable the accomplishment and realization of the public purposes intended by Arkansas Constitution, Amendment 62 and is not intended to otherwise limit in any manner the exercise of the powers of counties and municipalities.

Thus, the purpose of Amendment 62 is to authorize municipalities to issue bonds upon approval of the voters. Also, it does not otherwise limit the exercise of power by municipalities and counties.

■ Ordinance 4038 complied with Amendment 62 in calling for a special election to put the question of a bond issue to finance the Town Center project before the voters. The ordinance provides:

> WHEREAS, the City can finance the Town Center including incidental expenses and expenditures in connection with constructing and equipping the Town Center and expenses in connection with authorizing and issuing bonds by the issuance of bonds in an amount not to exceed $6,950,000.00.

The ballot title provides similarly:

> VOTE FOR OR AGAINST the issuance of bonds of the City of Fayetteville to finance the construction of the Fayetteville Town Center as a new, multi-purpose, civic center for meetings, conventions, exhibitions, entertainment events, related uses an parking. The bonds will be issued in an amount not to exceed $6,950,000.00 and for a term not to exceed twenty-two years and will be retired from all or any part of the proceeds of the city's existing 1% hotel and restaurant gross receipts tax.

Both the ordinance and the ballot title discuss the issuance of bonds to finance debt. That is the purpose of Amendment 62. There is no discussion in Amendment 62, nor in the ordinance, nor in the ballot title, regarding anything but issuance of bonds as a means of structuring debt of $6,950,000 to be used in the construction of the Town Center. To read into the ordinance or ballot measure a restriction on how much the City may expend on the Town Center is to read into them something that was never contemplated, something that is not there, and something that is not provided for by Amendment 62, which is the only authority by which the measure was presented to the voters. Appellants want to characterize the ballot measure as one that placed before the voters the decision on total costs for the Town Center when what it was, was a request for authorization to issue bonds.

█ Appellants assert *Arkansas-Missouri Power Corp. v. City of Rector*, 214 Ark. 649, 217 S.W.2d 335 (1949), is dispositive and requires that we rule in their favor. We disagree. *City of Rector* is inapposite to the facts of this case. First, the present case involves Amendment 62, and *City of Rector* involved Amendment 13. Second, the ordinance in *City of Rector* stepped beyond structuring debt. In that case, the Ordinance recited, "The Council finds that the estimated cost of said plant is Sixty-Five Thousand Dollars. . . ." *City of Rector*, 214 Ark. *at* 652. There is no such issue in this case. Amendment 62 speaks to financing by issuing bonds. The amount of debt undertaken on the project that is debt on the amount of the bond issue. The ordinance and the ballot title only speak to financing debt on the project. There was no misrepresentation. The bond measure passed by the voters only authorized the City to issue bonds and did not bind it to the bond sum as the total sum it could spend for construction of the Town Center.

### City Sales Tax

█ Appellants argue that the use of city sales tax funds in the general fund to pay for a portion of the costs of construction of the Town Center Project is a misappropriation of tax funds and a violation of Arkansas Constitution Art. 16, § 11, in that taxes levied to use in improvement of municipal services are being used to make capital improvements. An illegal exaction is a tax that is

either not authorized by law or is contrary to law. *Tucker v. Holt*, 343 Ark. 216, 33 S.W.3d 110 (2000); *Hartwick v. Thorne*, 300 Ark. 502, 780 S.W.2d 531 (1989). Article 16, § 11, of the Arkansas Constitution provides:

> No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose.

An illegal exaction also occurs where tax revenues are shifted to a use different than the use authorized. *Oldner v. Villines, supra*; *Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226 (1998). Further, where there is no statement of purpose for use of the taxes in the ordinance or ballot title, the revenues may be used for general purposes. *Maddox, supra*. However, if a purpose for the tax is stated either in the ordinance or in the ballot title, use of the funds for another purpose constitutes an illegal exaction. *Maas v. City of Mountain Home*, 338 Ark. 202, 992 S.W.2d 105 (1999).

In 1993, the City passed Ordinance 3688, which provided in pertinent part:

> AN ORDINANCE PROVIDING FOR THE LEVY OF A ONE PERCENT SALES AND USE TAX WITHIN THE CITY OF FAYETTEVILLE, ARKANSAS; PROVIDING FOR AN EXPIRATION DATE FOR SUCH SALES AND TAX OF JUNE 30, 2003 AND PRESCRIBING OTHER MATTERS PERTAINING THERETO.
>
> WHEREAS, the City Council of the City of Fayetteville, Arkansas (the "City") has determined that there is a great need for immediate improvement of municipal services and for a source of revenue to finance such services, and. . . .

The ballot title provided:

> AN ORDINANCE PROVIDING FOR THE LEVY OF A ONE PERCENT SALES AND USE TAX WITHIN THE CITY OF FAYETTEVILLE, ARKANSAS; PROVIDING FOR AN EXPIRATION DATE FOR SUCH SALES AND USE TAX OF 30 JUNE, 2003 AND PRESCRIBING OTHER MATTERS PERTAINING THERETO.

Appellants argue that the city sales tax could only be used for municipal services and that construction of the Town Center is a capital improvement, not municipal services. Neither the ordinance title nor the ballot title make mention of municipal services. That is found in the body of the ordinance. Just what was contemplated as municipal services in the ordinance was not defined. The Town Center is to provide a number of municipal services and will provide for meetings, conventions, exhibitions, entertainment events, and related uses. The sales tax was to be used to improve services and to finance improvement of services. Certainly, the construction of the Town Center could be construed to provide improvement of services.

■ ■ The appellants bear the burden of showing that the use of city sales-tax funds constitutes an illegal exaction. *Rankin v. City of Fort Smith*, 337 Ark. 599, 990 S.W.2d 535 (1999). It is, therefore, appellants' burden to prove that use of the sales tax for construction of the Town Center was not provision of, or financing provision of municipal services. Appellants incorrectly state that the issue is what constitutes "improvement of municipal services." Appellants fail to include all the relevant language. The relevant language is "(the City) has determined that there is a great need for an improvement of municipal services and for a source of revenue to finance such services. . . ." Appellants are also incorrect in arguing that the nature and extent of municipal services may be determined from the services in existence in 1993. First, the language of the ordinance and ballot title do not state anything about services in existence in 1993. Further, the provision for financing infers an intent to provide for future eventualities. We do not agree that the sales tax was limited to maintaining existing services. There is no support for this narrow interpretation in the authority provided.

■ Appellants also argue that Ark. Code Ann. § 14-73-101(2) (Repl. 1998) defines improvements, and that every capital improvement listed in this section as well as in Ark. Code Ann. § 26-75-203 (Repl. 1997), is a structure or building, and that the tax cannot reasonably be used to build a structure. The Town Center would unquestionably increase and improve the municipal services the City could provide for its citizens. But for structures,

no services could be provided. Municipal services are not provided in a vacuum. We are controlled by the language in the ordinance and in the ballot title. Based upon the case presented, we cannot say that under the subject ordinance, financing the improvement of municipal services may not include capital improvements.

### County Sales Tax

Appellants here assert that a countywide sales tax dating from 1981 was earmarked in the originating ordinance for countering a financial crisis existing in 1981 that threatened a reduction in "certain services." There was also a resolution by the county quorum court at this time indicating that additional funds derived from the tax could be used for county services and capital improvements. Finally, the tax provided that revenues not spent by the county would be returned pro rata to the municipalities.

Before we go further, we must note that the evidence presented to the trial court was that no turn-back funds were or would be used on the Town Center project. Appellants make no argument before this court that this is not so. If the funds are not being used on the project, there is no issue of illegal exaction in their use.

### Other Arguments

There are other arguments that arise in the appellees' brief and in the reply brief. They will not be considered. Any alleged assignments of error must be argued in the original brief. *Jordan v. State*, 323 Ark. 628, 917 S.W.2d 164 (1996); *Commonwealth Pub. Serv. Co. v. Lindsay*, 139 Ark. 283, 214 S.W. 9, (1919).

Affirmed.

CORBIN, BROWN and IMBER, JJ., concur.

ROBERT L. BROWN, Justice, concurring. The primary question in this appeal is whether language in the levying ordinance and in the ballot title itself for the 1997 bond issue can be read two ways. I believe it can. The levying ordinance and ballot title read in relevant part as follows:

*Levying Ordinance*

WHEREAS, the City can finance the Town Center including incidental expenses and expenditures in connection with constructing and equipping the Town Center and expenses in connection with authorizing and issuing bonds by the issuance of bonds in an amount not to exceed $6,950,000.00(the "Bonds") under the authority of Amendment 62 to the Constitution of the State of Arkansas . . . .

*Ballot Title*

VOTE FOR OR AGAINST the issuance of bonds of the City of Fayetteville to finance the construction of the Fayetteville Town Center as a new, multi-purpose, civic center for meetings, conventions, exhibitions, entertainment events, related uses and parking. The bonds will be issued in an amount not to exceed $6,950,000.00 and for a term not to exceed twenty-two years and will be retired from all or any part of the proceeds of the city's existing 1% hotel and restaurant gross receipts tax.

Williams argues that this language in the Ballot Title tells the voter that only $6,950,000 is needed to finance the Town Center. The City claims that neither instrument limits the City to a $6,950,000 price tag. I can read the instruments both ways, and because of this, I conclude that the language is unclear and ambiguous. The question is whether that fact, in and of itself, constitutes an illegal exaction.

This court has recognized two types of illegal exaction: (1) "public funds" cases where there is either a misapplication of public funds or recovery of funds wrongly paid to a public official; and (2) illegal tax cases where the tax itself is illegal. *See Barker v. Frank*, 327 Ark. 589, 939 S.W.2d 837 (1997); *Pledger v. Featherlite Precast Corp.*, 308 Ark. 124, 823 S.W.2d 852 (1992). The instant case is not an illegal-tax case. Nor does it involve the diversion of funds from one purpose to another, at least with regard to the bond issue. What the voters approved is bond financing of $6,950,000 for the project. The fact that that represented part or all of the money necessary to do the job does not equate to an illegal exaction. Like the majority, I do not view *Arkansas-Mis-*

*souri Power Corp. v. City of Rector*, 214 Ark. 649, 217 S.W.2d 335 (1949), as holding to the contrary. In that case, a lack of clarity was not involved but a deliberate misleading of the voters. The voters were told in the Ballot Title that the "estimated cost" of the electric light plant was $65,000, when in point of fact a week later it was shown to be more than twice that amount. That type of deliberate subterfuge is not evident in the case before us.

Where I disagree with the majority is in its suggestion that the voters should have understood the bonds were only partial financing for the project because the bonds were to be issued in accordance with Amendment 62 to the State Constitution. Reference to Amendment 62 appears only in the ordinance, and that fact appears to me to be irrelevant to our inquiry. I would not require the voting public to have knowledge of the intricacies of the State Constitution, such as Amendment 62, when they vote. What we have said in the past is that it is only the plain language of the Ballot Title that the public should look to for information. *See Daniel v. Jones*, 332 Ark. 489, 966 S.W.2d 226 (1998); *Arkansas-Missouri Power Corp. v. City of Rector, supra.* Indeed, in *Daniel*, we made it clear that mere references to an Act of the legislature in a ballot title was not sufficient to inform the voters about what they were voting. Here, Amendment 62 was not even mentioned in the ballot title. Yet, somehow the majority believes that the voters should have been aware of Amendment 62 *and* understood it. That goes way beyond what our cases have said and puts a horrendous burden on the voter. I would adhere to our previous cases and look only to the levying ordinance for the City's stated purposes and to the ballot title for information to the voter. *See Daniel v. Jones, supra.*

Where I also disagree with the majority is over the definition of "municipal services," as referenced in the 1993 levying ordinance for the one percent sales and use tax. The majority concludes that "municipal services" includes capital improvements and building projects. A "service" is defined as "the duties, work, or business performed or discharged by a government official . . . useful labor that does not produce a tangible commodity." *Webster's Third New International Dictionary, Unabridged* p. 2075 (1993). Services such as police, fire, and sanitation services differ qualita-

tively from capital improvements, such as construction of the Town Center.

The City argues that a Resolution was passed by the City Board on the same day as the 1993 levying ordinance for the one percent sales and use tax which clearly specified that the tax revenues would be used for construction projects. But that information was not part of the levying ordinance, and this court has recently held that City resolutions and other extraneous information cannot supersede the purposes stated in a levying ordinance. *See Maddox v. City of Fort Smith*, 346 Ark. 209, 56 S.W.3d 375 (2001). The majority opinion does not rely on the City's argument regarding the Resolution but, instead, concludes that a building project is a service.

As with the bond issue, the City's draftmanship suffers from a lack of clarity. Had the term "municipal services" been included in the 1993 Ballot Title, I would reverse on this point. Since it was not, I cannot say that this deficiency in the levying ordinance warrants reversal.

CORBIN, J., joins.

ANNABELLE CLINTON IMBER, Justice, concurring. I concur in the result reached by the majority. In my view, our decision in this case should begin and end with this court's decision in *Oldner v. Villines*, 328 Ark. 296, 943 S.W.2d 574 (1997). As stated in the majority opinion, *Arkansas-Missouri Power Corp. v. City of Rector*, 214 Ark. 649, 217 S.W.2d 335 (1949), is inapposite to the facts of this case.

The Appellants' fourth amended complaint alleges that the City perpetrated an illegal exaction when it expended the "public's money from sources unauthorized by the voters and citizens [. . .] a violation of Article 16, § 11, of the Arkansas Constitution." That Article and section provides in relevant part: "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, and no moneys arising from a tax levied for one purpose shall be used for any other purpose." In construing this constitutional provision, we have held that, "[i]t is only when a *diversion* of tax revenues occurs

from a specific purpose that has been authorized to an unauthorized purpose that an illegal exaction occurs." *Oldner v. Villines*, 328 Ark. at 305, 943 S.W.2d at 579 (1997)(emphasis added).

Here, there has been no diversion of funds derived from the bond issue, the city sales tax, or the county sales tax. That is, none of these funds have been used for a purpose not authorized by a city or county ordinance. Under *Oldner v. Villines, supra*, an illegal exaction does not occur until tax revenues are shifted to a use different from that authorized. Therefore, no illegal exaction in the expenditure of public funds has occurred in this case.