The Honorable Sue Madison State Senator 573 Rock Cliff Road Fayetteville, AR 72701
Dear Senator Madison:
You have presented the following questions for my opinion:
 (1) Can a city of the first class divert street fund monies derived from federal and state turnback taxes to a general fund account (i.e.,
shop fund) through excessive charges over and above the actual cost of replacement, maintenance, and overhead charges related to each vehicle in question within the street division?
 (2) If the answer to Question 1 is no, what must be done with the excess funds accumulated within the shop fund as a result of the equipment overcharges?
 (3) Must the shop fund provide a detailed actual cost assignment to each vehicle being charged to the street fund to assure that no excess monies are being charged to the street fund?
 (4) Since street fund monies must be utilized for the "construction and maintenance of safe and usable streets," can street fund resources (i.e., labor, equipment, materials) be diverted to work for other departments within the city without reimbursement from the department that received the resourced of the street division (i.e., yard waste and limb pickup by the solid waste department, parks department construction and maintenance activities)?
 (5) Can street fund resources be utilized for the benefit of non-profit organizations putting on shows, events, or other activities without reimbursement for such assistance in the activity?
RESPONSE
Question 1 — Can a city of the first class divert street fund moniesderived from federal and state turnback taxes to a general fund account(i.e., shop fund) through excessive charges over and above the actualcost of replacement, maintenance, and overhead charges related to eachvehicle in question within the street division?
It is my opinion that the city cannot maintain street fund monies in a general fund account. This issue is specifically addressed by the provisions of A.C.A. § 14-59-104:
 (a) All municipalities of this state receiving state aid in the form of either turnback of general revenues or highways revenues shall maintain all funds in depositories approved for such purposes by law.
 (b) The municipalities shall maintain separate bank accounts for general funds and street funds.
(c) The accounts shall be maintained in the name of the municipality.
A.C.A. § 14-59-104 (emphasis added).
Under the unequivocal language of the above-quoted provision, cities are required to maintain street fund monies in a separate account and cannot maintain such monies in a general fund account.
I note that your questions, when read together, appear to be based upon a scenario in which the city maintains a general fund account (the "shop fund"), which bills other accounts, such as the street fund account, for payment of items to which those other accounts are dedicated. Under this scenario, monies from the other accounts are then apparently transferred to the "shop fund" for the purpose of paying these items. Your question seems to indicate that the "shop fund" has billed the street fund account in an amount over and above the amount actually needed to pay street fund expenses. If this is the case, any additional amount over and above the actual cost of street fund expenses cannot be maintained in the "shop fund" without violating the explicit directive of A.C.A. § 14-59-104(b), above.
Question 2 — If the answer to Question 1 is no, what must be done withthe excess funds accumulated within the shop fund as a result of theequipment overcharges?
It is my opinion that if street fund monies have been transferred into a general fund account as a result of excess charges for street fund expenses, the excess amount must be returned to the street fund account, so as to be in compliance with A.C.A. § 14-59-104(b), as discussed in response to Question 1.
Question 3 — Must the shop fund provide a detailed actual cost assignmentto each vehicle being charged to the street fund to assure that no excessmonies are being charged to the street fund?
It is my opinion that cities must maintain accounting records that are detailed enough to accurately reflect actual expenses that are payable from street fund monies.
Although state law does not specify the specific level of detail that must be reflected in street fund records, it does provide some guidance, by listing the types of detailed accounting records that must be maintained and that are subject to audit. In my opinion, this list would include the type of information you have described. The applicable statute states:
 (a) Accounting records can basically be divided into the following two (2) groups:
 (1)(A) SUPPORT DOCUMENTS. Support documents consist primarily of the following items:
(i) Cancelled checks;
(ii) Invoices; and
(iii) Bank statements.
(B) These records shall be maintained for a period of at least three
 (3) years and in no event shall be disposed of prior to being audited for the period in question.
(2)(A) PERMANENT RECORDS. Permanent records consist of:
(i) Journals;
(ii) Ledgers;
(iii) Subsidiary ledgers;
(iv) Minutes; and
(v) Fixed assets and equipment detail records.
 (B) These records shall be maintained for a period of not less than seven (7) years by the municipality, after which period the records may be destroyed after an audit has been made of the records.
 (b) When documents are destroyed, the municipality shall document the destruction by the following procedure:
 (1)(A) An affidavit is to be prepared stating which documents are being destroyed and to which period of time they apply, indicating the method of destruction;
 (B) This affidavit is to be signed by the municipal employee performing the destruction and one (1) council member.
 (2)(A) In addition, the approval of the council for destruction of documents shall be obtained, and an appropriate note of such approval indicated in the council minutes along with the destruction affidavit;
(B) This council approval shall be obtained prior to the destruction.
A.C.A. § 14-59-114.
Because state law requires that street fund monies be expended only on street related expenses, see, e.g., A.C.A. §§ 27-70-207(b), 27-72-408,27-72-410, 19-5-1075, it is my opinion that the above-quoted list must be interpreted to require that cities maintain detailed enough records to reflect compliance with that requirement. In my opinion, compliance would necessitate maintaining records reflecting the type of information you have described.
Question 4 — Since street fund monies must be utilized for the"construction and maintenance of safe and usable streets," can streetfund resources (i.e., labor, equipment, materials) be diverted to workfor other departments within the city without reimbursement from thedepartment that received the resources of the street division (i.e., yardwaste and limb pickup by the solid waste department, parks departmentconstruction and maintenance activities)?
It is my opinion that street fund monies cannot be used to pay for labor, equipment, or materials that are not utilized in connection with streets.
As previously indicated, numerous provisions of state law explicitly restrict the use of street fund monies to street-related expenses. See, e.g., A.C.A. §§ 27-70-207(b) (restricting to use for "maintenance, construction, and reconstruction of streets"); 27-72-408 (restricting to use for "construction, maintenance, or repair of the streets of the municipality"); 27-72-410 (restricting to use "exclusively for street improvements"); 19-5-1075 (restricting to use "to improve streets"). If any street fund monies would be used to pay for resources such as labor, equipment, materials that are not utilized in connection with street construction, maintenance, or repair, such use of the funds would be contrary to these statutory restrictions. In addition, as discussed in response to Question 5, such use of street fund monies could constitute a violation of various constitutional provisions.
Question 5 — Can street fund resources be utilized for the benefit ofnon-profit organizations putting on shows, events, or other activitieswithout reimbursement for such assistance in the activity?
It is my opinion that the answer to this question will depend on certain factual determinations that I am not authorized to make. If it is factually determined that the funds are used primarily for the benefit of the non-profit organizations, and not for street purposes, the use would be impermissible. I also note that municipal funds other than street fund monies cannot be used for non-municipal purposes either. These conclusions are explained more fully below.
The scenario you have described gives rise to concerns under several constitutional provisions (in addition to concerns under the applicable statutory restrictions, as discussed in response to Question 4). More specifically, the use of street fund resources for the benefit of a non-profit organization could be problematic under Article 12, § 5, and Article 16, §§ 11 and 13 of the Arkansas Constitution.
Article 12, § 5
Article 12, § 5 of the Arkansas Constitution states:
 5. Political subdivisions not to become stockholders in or lend credit to private corporations.
 No county, city, town or other municipal corporation shall become a stockholder in any company, association or corporation; or obtain or appropriate money for, or loan its credit to, any corporation, association, institution or individual.
Ark. Const., Art. 12, § 5.
The Arkansas Supreme Court has interpreted Article 12, § 5 in numerous cases. See, e.g., Bourland v. Pollock, 157 Ark. 538, 545, 249 S.W. 60
(1923) (confederation of private organizations and public officials whose purpose was to aid "sick and afflicted children, wayward girls and worthy or indigent families" could receive public funds because it served a public purpose that otherwise would have been performed by governmental agencies); Bank of Commerce v. Huddleston, 172 Ark. 999, 291 S.W. 422
(1927) (donations of public funds to private improvement district was permissible because organization not formed "with a view to gain"); Neelv. City of Little Rock, 204 Ark. 568, 163 S.W.2d 525 (1942) (city contributions to Community Chest that funded various private charities was not objectionable because statutorily authorized); Halbert v.Helena-West Helena Industrial Development Corp., 226 Ark. 620, 625,291 S.W.2d 802 (1956) (striking down statutorily-authorized purchase by local government of "membership" in private industrial development corporation, but not reversing Neel); City of Little Rock v. Venhaus,302 Ark. 204, 788 S.W.2d 478 (1990) (reversing distribution of illegal exaction residual funds to various charities, not mentioning "public purpose," and directing that the funds be used for municipal purposes);McCutchen v. Huckabee, 328 Ark. 202, 943 S.W.2d 225 (1997) (upholding appropriation to fund a multipurpose civic center to be owned by quasi-public facilities board); Chapman v. Bevilacqua, 344 Ark. 262,42 S.W.3d 378 (2001) (upholding use of city funds for administration of federal redevelopment program because statutorily-authorized public purpose).
My predecessor in office gave a thorough discussion of the court's interpretation of Article 12, § 5 in Op. Att'y Gen. No. 1999-408. He drew the following conclusions from his review of the above-cited cases:
 [A]ny use of county moneys for charitable purposes may well pass constitutional muster if the use serves a public purpose or achieves a governmental function, so long as the recipient can be characterized as "public" in the sense discussed above. As the law currently stands, there appears to be some element of fiat in the Supreme Court's pronouncements regarding what pledges of municipal or county funds will be permitted. As established in McCutchen, it is clearly permissible, for instance, to contribute to a facilities board, which, despite not being a straightforward municipal agency, has a statutory pedigree and has been identified as a category of entity beyond the contemplation of article 12, § 5. In the wake of Venhaus, however, it is clearly impermissible to contribute to a private nonprofit corporation like the AIDC. Perhaps the most that can be said is that if an entity is authorized by statute and is not organized as a private nonprofit corporation, and especially if the donations themselves are authorized by statute, a donation of county or municipal funds may be constitutional. These principles reflect a clear move by the Court to reassert that public moneys may only be put to public use. The analysis of whether a particular entity meets these criteria is one of fact[.]
Op. Att'y Gen. No. 1999-408 at 9.
As the above-quoted observation indicates, in order for me to determine whether the use of street fund resources you have described is permissible under Article 12, § 5, given the history of the court's interpretation of that provision, it would be necessary for me to know more facts about the nature of the non-profit organization(s) in question, and the nature of the activities for which the resources would be used.
Article 16, § 13
The use of street fund resources for the benefit of a non-profit organization could constitute an "illegal exaction" under Article16, § 13 of the Arkansas Constitution, which states:
 Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.
Ark. Const., Art. 16, § 13.
The Arkansas Supreme Court has recognized that an "illegal exaction," within the meaning of Article 16, § 13, can take two forms: (1) A misapplication of public resources; and (2) A wrongful taxation. Williamsv. City of Fayetteville, 348 Ark. 768, 76 S.W.3d 235 (2002); Villines v.Harris, 340 Ark. 319, 11 S.W.3d 516 (2000); Ghegan v. Weiss, 338 Ark. 9,991 S.W.2d 536 (1999); Western Foods, Inc. v. Weiss, 338 Ark. 140,992 S.W.2d 100 (1999); Pledger v. Featherlite Precast Corp., 308 Ark. 124,823 S.W.2d 852, cert. denied, 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46
(1992). A misapplication of public resources involves the use of public resources for a private purpose.
One of the leading cases in which the Arkansas Supreme Court addressed the issue of the unlawful use of public resources for a private purpose was Chandler v. Board of Trustees, 236 Ark. 256, 365 S.W.2d 447 (1963). In that case, a taxpayer challenged the use of tax funds for the purpose of paying retirement benefits to employees of the Arkansas Education Association, which was a private organization. The court concluded that even though these employees worked primarily in jobs that benefited the public, the use of tax funds to pay their retirement benefits did not benefit the public primarily, but rather, primarily benefited the employees privately, and was therefore unlawful. In so holding, the court gave a concise statement of the law applicable to the issue of the use of public funds for a private purpose:
 No principle of constitutional law is more fundamental or more firmly established than the rule that the State cannot, within the limits of due process, appropriate public funds to a private purpose. A century ago the basic doctrine was simply stated in the leading case of Brodhead v. City of Milwaukee, 19 Wis. 624: "The legislature cannot create a public debt, or levy a tax, or authorize a municipal corporation to do so, in order to raise funds for a mere private purpose. It cannot in the form of a tax take the money of the citizens and give it to an individual, the public interest or welfare being in no way connected with the transaction. The objects for which money is raised by taxation must be public, and such as subserve the common interest and well being of the community required to contribute."
Chandler, 236 Ark. at 258, quoting Brodhead v. City of Milwaukee,19 Wis. 624. Accord, Chapman v. Bevilacqua, 344 Ark. 262, 42 S.W.3d 378
(2001); Clark v. State, 308 Ark. 84, 824, S.W.2d 345 (1992) (Brill, J., concurring); Brewer v. Hawkins, 241 Ark. 460, 408 S.W.2d 492 (1966);Samples v. Grady, 207 Ark. 724, 182 S.W.2d 875 (1944).
A primary consideration in "public funds" cases appears to be whether those who contributed the tax money at issue received the intended benefit therefrom, or whether, by contrast, the benefit was received by a private individual or entity. This consideration is largely a question of fact that can only be answered in light of all of the evidence that is relevant to the particular case. Accordingly, an adequate answer to your question will require an analysis, under all of the facts of the situation, of whether the intended beneficiaries of the street fund resources at issue did, in fact, receive that benefit, or whether a private individual or entity received it instead.
Article 16, § 11
If the use of street fund resources for the benefit of a non-profit organization is deemed, under the facts of the situation, to be remote enough from street-related purposes, the use of these resources for this purpose might constitute a violation of Article 16, § 11 of the Arkansas Constitution. That provisions states:
 No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose.
Ark. Const., art. 16, § 11;
Finally, I note that although cities cannot donate public funds and resources to private purposes in contravention of the constitution, they are not prohibited from entering into contracts with private entities that are supported by adequate consideration and that serve a legitimate public purpose. See Ops. Att'y Gen. Nos. 2001-256; 2001-083; 99-357; 97-250; 97-108; 96-287; 95-374; 93-274; 92-099; 91-410; 89-061.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General