Mr. Robert T. Rogers, II Prosecuting Attorney Nineteenth East District 301 W. Trimble Post Office Box 536 Berryville, AR 72615
Dear Mr. Rogers:
You have requested my opinion on several issues related to Carroll County Ordinance No. 2000-39, a copy of which you have provided. Your questions are:
 (1) May sales tax revenue generated by Carroll County Ordinance No. 2000-39 be used to acquire office space, to purchase equipment and/or to pay employees' salaries for the Carroll County 911 dispatch center before construction of the jail and sheriff's office is complete?
 (2) If jail tax revenue cannot be used for the 911 dispatch center, what happens to the $300,000.00 that has already been transferred from jail tax proceeds to the 911 dispatch center?
 (3) How can excess revenue generated by this sales tax be used given the ballot title? Can the excess revenue be used in any fashion for the Sheriff's Department given the ballot title?
 (4) How can the jail tax revenue be used once the jail and the Sheriff's Department are built?
Carroll County Ordinance 2000-39 was enacted pursuant to the authority granted in A.C.A. § 26-74-401 et seq. and proposed a one-half of one percent sales tax for the county. The ordinance provided for the following ballot title to be presented to the electorate:
 A PROPOSAL TO LEVY A ONE HALF OF ONE PERCENT (0.5%) SALES AND USE TAX WITHIN CARROLL COUNTY TO BE USED TO CONSTRUCT AND EQUIP A JAIL FACILITY AND SHERIFF'S DEPARTMENT AND TO BE USED TO OPERATE THE JAIL FACILITY AND A CENTRAL DISPATCH OFFICE. ANY EXCESS REVENUE GENERATED BY THE (0.5%) SALES AND USE TAX AFTER THE QUORUM COURT HAS APPROPRIATED NEEDED JAIL AND CENTRAL DISPATCH OPERATING FUNDS SHALL BE USED FOR FUTURE JAIL EXPANSION, CAPITAL IMPROVEMENTS OR COUNTY ROADS.
This ballot title directly tracks the language of the ordinance itself. It is my understanding that an election was held at which the above quoted ballot title was submitted to the voters, and the voters approved the proposed tax.
RESPONSE
Question 1 — May sales tax revenue generated by Carroll County OrdinanceNo. 2000-39 be used to acquire office space, to purchase equipment and/orto pay employees' salaries for the Carroll County 911 dispatch centerbefore construction of the jail and sheriff's office is complete?
I am unable to answer this question definitively. A definitive answer would require interpretation of the term "dispatch center," as used in Ordinance No. 2000-39, and whether that term was intended to refer to the 911 dispatch center. The Attorney General is not authorized to undertake the construal of the language of local ordinances. Such construals necessarily involve a determination of the intent of the local legislative body, a factual matter that this office is not well situated to consider and address. Such construals also require a consideration of other factors of which this office is unaware that could reflect a particular intent on the part of the local legislative body that is not apparent from the face of the ordinance. The awareness of such factors is a matter within the local domain, rather than the domain of this office. The construal of any local ordinance therefore must ultimately be handled locally by the interested parties and their counsel, or through a medium that can consider local factual matters, such as a court.
In coming to an understanding of the intended meaning of the term "dispatch center," it will be necessary for the interested parties or the finder of fact to consider whether any evidence exists to indicate that the voters could have reasonably understood the term "dispatch center" to refer to the 911 dispatch center. If, for example, the only "dispatch center" in the area at the time of the passage of Ordinance No. 2000-39 was one that handled 911 calls, that fact would weigh in favor of an interpretation of the term as referring to the 911 dispatch center. Any other facts reflecting the local understanding of the term should also be considered. See Williams v. City of Fayetteville, 348 Ark. 768,76 S.W.3d 235 (2002) (looking to existing state of affairs of locality at time of passage of tax measure as evidence for proper interpretation of language of tax measure's ballot title). The history of the area's 911 system will also be pertinent to the question.
Question 2 — If jail tax revenue cannot be used for the 911 dispatchcenter, what happens to the $300,000.00 that has already been transferredfrom jail tax proceeds to the 911 dispatch center?
It is my opinion that if a factual and legal determination is made that the tax revenues in question cannot be used for the 911 dispatch center, any amounts that have been diverted to that purpose must be refunded to the proper account.
This issue is governed primarily by Article 16, §§ 11 and 13 of the Arkansas Constitution. Article 16, § 11 states in pertinent part: "[N]o moneys arising from a tax levied for one purpose shall be used for any other purpose." If a factual and legal determination is made that the tax proceeds in question were not intended to be used for the 911 dispatch center, that use of the proceeds would constitute a violation of Article 16, § 11. A violation of this nature could be corrected only by a refund of the diverted funds to the proper account.
Such a use of the tax proceeds could also be deemed to constitute an "illegal exaction" within the meaning of Article 16, § 13 of the Arkansas Constitution. That provision of the constitution states:
 Any citizen of any county, city or town may institute suit in behalf of himself and all others interested, to protect the inhabitants thereof against the enforcement of any illegal exactions whatever.
Ark. Const., Art. 16, § 13.
The Arkansas Supreme Court has explained the concept of an illegal exaction as follows:
 An illegal exaction is a tax that is either not authorized by law or is contrary to law. Tucker v. Holt, 343 Ark. 216, 33 S.W.3d 110 (2000); Hartwick v. Thorne, 300 Ark. 502, 780 S.W.2d 531 (1989). . . . An illegal exaction also occurs where tax revenues are shifted to a use different than the use authorized. Oldner v. Villines, [328 Ark. 296, 943 S.W.2d 574 (1997)], supra; Daniel v. Jones, 332 Ark. 489, 966 S.W.2d 226 (1998). Further, where there is no statement of purpose for use of the taxes in the ordinance or ballot title, the revenues may be used for general purposes. Maddox [v. City of Fort Smith, 346 Ark. 209, 56 S.W.3d 375 (2001)], supra. However, if a purpose for the tax is stated either in the ordinance or in the ballot title, use of the funds for another purpose constitutes an illegal exaction. Maas v. City of Mountain Home, 338 Ark. 202, 992 S.W.2d 105
(1999).
Williams v. City of Fayetteville, 348 Ark. 768, 776, 76 S.W.3d 235
(2002). In Daniel, cited by the court in the above passage, the court specifically held that a violation of Article 16, § 11 (i.e., the diversion of tax proceeds to a purpose other than that for which the tax was levied) constitutes an illegal exaction. Moreover, the Daniel court stated: "Whether the governmental entity levying and collecting the tax intended to put the revenues to `good use' is of no consequence, so long as the funds are being spent on any purpose other than those specified on the ballot." Daniel, 332 Ark. at 500, citing Hartwick v. Thorne,300 Ark. 502, 780 S.W.2d 531 (1989).
On the basis of the court's unequivocal position on this issue, I must conclude that if a determination is made that the proceeds of the tax in question cannot be used for the 911 dispatch center, any amounts already diverted to that purpose must be refunded to the appropriate account in order to avoid a charge of illegal exaction.
Question 3 — How can excess revenue generated by this sales tax be usedgiven the ballot title? Can the excess revenue be used in any fashion forthe Sheriff's Department given the ballot title?
It is my opinion that any excess revenue generated by the sales tax —i.e., revenue in excess of the amounts needed and appropriated for jail and central dispatch operating funds — can only be used for "future jail expansion, capital improvements, or county roads." Such a use would be in accordance with the express provision of the levying ordinance and ballot title. That provision states:
 ANY EXCESS REVENUES GENERATED BY THE (0.5%) SALES AND USE TAX AFTER THE QUORUM COURT HAS APPROPRIATED NEEDED JAIL AND CENTRAL DISPATCH OPERATING FUNDS SHALL BE USED FOR FUTURE JAIL EXPANSION, CAPITAL IMPROVEMENTS OR COUNTY ROADS.
Carroll County Ordinance No. 2000-39.
I cannot opine as to whether this language should be interpreted to permit use "in any fashion for the Sheriff's Department." Again, as discussed in response to Question 1, I cannot interpret this language of the ordinance because I am not in a position to evaluate the facts that would reflect the intent of the quorum court or the local voters. I note, however, that the language of the measure regarding the use of excess revenues is quite broad, and as long as a particular use of the revenues can reasonably be classified as a use for "future jail expansion, capital improvements, or county roads," it will be deemed permissible by a court.
Question 4 — How can the jail tax revenue be used once the jail and theSheriff's Department are built?
See response to Question 3.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General