The Honorable Stan Berry State Representative P.O. Box 41 Dover, AR 72837-0041
Dear Representative Berry:
I am writing in response to your request for my opinion on the following questions:
 1. Does Arkansas Code § 26-74-214 (Supp. 2001) apply as the method of disposition of funds for a sales and use tax imposed based on Arkansas Code § 26-73-113? If not, what code section applies as the method of disposition of the tax?
 2. If a ballot title regarding the levy of a sales and use tax pursuant to Arkansas Code § 27-73-113 [sic: 26-73-113] does not specify a method of distribution of the tax, is a pro-rata distribution required as set out in Arkansas Code § 26-74-214(b)(2)(B) (Supp. 2001)?
 3. Does Arkansas Code § 26-73-103 apply to the levy of a sales and use tax pursuant to Arkansas Code § 26-73-113?
 4. With regard to Arkansas Code § 26-73-103(e), must a sales and use tax pursuant to Arkansas Code § 26-73-103 benefit not only the county, but also every municipality located within that county?
RESPONSE
With respect to your first question, I believe A.C.A. § 26-74-214(f) dictates the appropriate disposition of sales and use tax revenues devoted to debt service on bonds. However, given the limitations on the use of other tax revenues pursuant to A.C.A. § 27-73-113, I believe the pro-rata distribution of tax revenues among the county and its municipalities, which A.C.A. § 26-74-214(b)(2)(B) anticipates, would mark a diversion of revenues from their intended purpose in derogation of Ark. Const. art. 16, § 11. In my opinion, the appropriate distribution scheme is set forth at A.C.A. § 26-73-105, which authorizes a local unit of government to distribute such tax revenues either through its local collector or by designating the director of the Department of Finance and Administration to do so. With respect to your second question, as noted in my response to your first question, I believe a pro-rata distribution of tax revenues collected pursuant to A.C.A. § 27-73-113 would amount to an illegal exaction in violation of Ark. Const. art. 16, § 11. With respect to your third question, A.C.A. § 26-73-103 is consistent with A.C.A. § 27-73-113 in that the former statute anticipates that subsequent legislation like the latter statute might approve the levying of sales and use taxes. To the extent that the statutes conflict, I believe A.C.A. § 27-73-113 will control because it was enacted later. I am unable to answer your fourth question, since A.C.A. § 26-73-103 does not authorize levying sales and use tax. However, to the extent that A.C.A. § 26-73-103(e) might be read as requiring that any subsequently enacted legislation authorizing a sales and use tax provide for a pro rata distribution of tax proceeds among the county and its municipalities, I believe this statute is superseded by the contrary provisions of A.C.A. § 26-73-113.
Question 1: Does Arkansas Code § 26-74-214 (Supp. 2001) apply as themethod of disposition of funds for a sales and use tax imposed based onArkansas Code § 26-73-113? If not, what code section applies as themethod of disposition of the tax?
In my opinion, the answer to your first question is "yes" with respect to tax revenues pledged to the retirement of bonded indebtedness and "no" with respect to tax revenues devoted to any of the other uses authorized in A.C.A. § 26-73-113. With respect to the latter category of tax revenues, I believe A.C.A. § 26-73-105 controls the disposition of funds.
Section 26-73-113 of the Arkansas Code (Repl. 1997), contained within the chapter of the Code dealing with taxation generally, provides in pertinent part:
 (a)(1) In lieu of using all or a portion of its authority to levy a sales and use tax solely to pay bonded debt under § 14-164-327, the governing body of any municipality or county may adopt an ordinance levying a tax in the amount of one-fourth of one percent (.25%), one-half of one percent (0.5%), three-fourths of one percent (.75%), or one percent (1%) upon all taxable sales of property and services subject to the tax levied by the Arkansas Gross Receipts Act, § 26-52-101 et seq., and upon the privilege of storing, using, distributing or consuming within this state any tangible personal property which is subject to the Arkansas Compensating Tax Act of 1949, § 26-53-101 et seq. The ordinance or ordinances must specify that the tax is being levied under this law. By levying a tax under this section, the municipality or county levying a tax hereunder shall lose its authority to levy up to a one percent (1%) sales and use tax under § 14-164-327 solely to pay bonded debt only to the extent of the tax levied hereunder.
(2) The proceeds of a tax levied under this section may be used to:
 (A) Finance the operation, maintenance and/or rental expense of capital improvements, or a solid waste management system or part thereof as defined in § 8-6-203, or both;
 (B) Secure the repayment of bonds by the municipality or county issued under §§ 14-164-301—14-164-339;
 (C) Acquire or construct capital improvements of a public nature for no more than twenty-four (24) months; or
(D) Any or all of the above.
As suggested in subsection (a)(1) of this statute, A.C.A. § 14-164-327
(Supp. 2001) authorizes the imposition of a local sales and use tax "to retire bonds for capital improvement purposes." Subsection (a)(2) of A.C.A. § 26-73-113 simply allows using the proceeds of the substitute sales and use tax authorized in that section for a broader range of uses than just debt service.
Subsection 26-73-113(b) of the Code provides:
 To the extent permitted by this section, a governing body levying a tax under this section shall follow the procedures prescribed by §§ 14-164-301—14-164-338, and the tax shall be collected, reported, and remitted in the same manner and at the same time as a tax levied under that subchapter.
(Emphasis added.) Subsection 14-164-333(a)(2)(A) provides in pertinent part that the director of the Department of Finance and Administration "shall perform all functions incidental to the administration, collection, enforcement, and operation of the tax, as provided in §§26-74-201 — 26-74-219." Section 26-74-214, which deals with the procedure for disposition of sales and use tax revenues, is contained within the just referenced statutory scheme. The question, then, becomes whether the procedure for disposition of funds under A.C.A. § 26-74-214[1] is "permitted by" A.C.A. § 26-73-113.
With respect to the usage of tax proceeds to service bond debt, I believe the procedure for disposition of funds provided in A.C.A. § 26-74-214 is fully consistent with the provisions of A.C.A. § 26-73-113. Specifically, A.C.A. § 14-164-332(a) provides that tax proceeds collected by the director of DFA "acting as agent for any municipality or county which, as indicated by a certified copy of an ordinance of the municipality or county previously filed with the director and the State Treasurer, are pledged to secure the retirement of bonds" will be transmitted to the state treasurer. Subsection 26-74-214(f) of the Code further provides in pertinent part:
 Any moneys collected which, as indicated by a certified copy of an ordinance of the quorum court of the county previously filed with the director and the Treasurer of State, are pledged to secure lease rentals or the payment of bonds authorized by this subchapter shall not be deposited in the State Treasury but shall be deposited by the Treasurer of State in a bank or banks designated by the county, as cash funds, and transmitted to the county subject to the charges payable and retainage authorized in this section. Charges deducted shall be transmitted to the Treasurer of State and amounts retained shall be retained by the director as cash funds.
In my opinion, taxes levied to finance the other specific purposes set forth at A.C.A. § 26-73-113(a)(2) should not be distributed in the manner set forth at A.C.A. § 26-74-214. Section 26-74-214(b)(2)(B) of the Code provides:
 If the ballot is silent on the method of distribution, it shall be per capita among the county and each municipality located within the county unless an interlocal agreement is executed between the affected county and its municipalities indicating a different distribution.[2] If an interlocal agreement is used, a copy of the agreement shall be furnished to the Treasurer of State and the distribution of the tax shall be as agreed upon. The ballot shall specify the method of distribution contained in the interlocal agreement if any method of distribution other than a per capita share is to be used. A copy of the ballot shall be furnished to the Treasurer of State.
(Emphasis added.) As reflected in the highlighted passage, this statute clearly mandates a per capita distribution of tax revenues unless an interlocal agreement dictates otherwise. However, beyond authorizing the use of tax proceeds to service bonded indebtedness for capital improvements, A.C.A. § 26-73-113(b) mandates that tax proceeds be used only to finance particular projects. In my opinion, it is logically inconsistent to suggest that taxes levied either to service debt or to finance particular projects could be put to their intended use if distributed "per capita among the county and each municipality located within the county."
Moreover, as a matter of constitutional law, the ballot must set forth these particular purposes, thus negating the pro-rata distribution provision under the express terms of A.C.A. § 26-74-214(b)(2)(B). See
highlighted passage above. Article 16, § 11 of the Arkansas Constitution provides: "No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same; and no moneys arising from a tax levied for one purpose shall be used for any other purpose." Section 26-73-113(b) of the Code authorizes quorum courts to levy sales and use taxes only for the purposes recited therein. Assuming the levying ordinance and ballot comply with the law in reciting only one or more of those purposes, I believe it would offend Ark. Const. art. 16, § 11 to distribute the tax proceeds pro rata among the county and the municipalities located within the county. See Daniel v.Jones, 332 Ark. 489, 502, 966 S.W.2d 226 (1998) (holding that when the levying ordinance and ballot recited only five county uses for sales tax proceeds, Ark. Const. art. 16, § 11 prohibited distributing the proceeds pro rata among the county and municipalities located within the county).
Given that A.C.A. § 26-74-214 provides no constitutionally permissible process for the disposition of sales and use tax revenues collected to finance particular projects pursuant to A.C.A. § 26-73-113, the question remains what process for distributing the assets applies. In my opinion, the answer to this question lies in A.C.A. § 26-73-105 (Repl. 1997), which provides:
 (a) A tax levied under the authority of this subchapter may be collected in one (1) of two (2) ways:
 (1) The local government may collect the tax utilizing its own personnel or in cooperation with other local governments; or
 (2) The director shall collect the tax upon request of a local government, in which event the director shall perform all functions incident to the administration, collection, enforcement, and operation of the taxes in the manner and following the procedures that are prescribed for the corresponding state taxes.
 (b) The director shall deduct from all revenues collected pursuant to this subchapter up to three percent (3%) as a cost of collection.
In light of the inapplicability of the distribution process set forth at A.C.A. § 26-74-214(b)(2)(B) to sales and use taxes levied for particular projects pursuant to A.C.A. § 26-73-113, I believe the applicable statute is A.C.A. § 26-73-105, which sets forth the distribution scheme that generally applies to taxes levied pursuant to subchapter 1 of chapter 73 of title 26 of the Code. Accordingly, I believe the county or municipality may either collect and distribute such taxes using its own collector or designate the director of DFA to do so.
Question 2: If a ballot title regarding the levy of a sales and use taxpursuant to Arkansas Code § 27-73-113 [sic: 26-73-113] does not specify amethod of distribution of the tax, is a pro-rata distribution required asset out in Arkansas Code § 26-74-214(b)(2)(B) (Supp. 2001)?
I find this question confusing in that it appears to conflate the question of which entity or entities will collect and distribute the tax — i.e., the "method of distribution of the tax" — with the separate question of how the tax proceeds will be apportioned among the various authorized beneficiaries. As discussed in my response to your previous question, the court in Daniel made it clear that the latter question can only be determined by looking to the levying ordinance and the ballot title, which must specify both the purpose and the intended recipient of the tax. Specifically with respect to the sales and use tax proceeds at issue in your question, this means that the levying ordinance and ballot title will specify (1) what entity will receive the tax proceeds, (2) to which of the purposes authorized at A.C.A. § 27-73-113(a)(2) the tax will be put and, (3) if the tax will be devoted to more than one authorized purpose, what percentage of tax proceeds will be devoted to each authorized purpose. In my opinion, any failure to provide this information on the ballot would render the tax and illegal exaction subject to challenge under Ark. Const. art. 16, § 11. As I pointed out above, none of the purposes authorized at A.C.A. § 27-73-113(a)(2) would result in the pro-rata distribution of tax proceeds among the county and the municipalities contained within the county.
With respect to the logically distinct question of what procedure will apply in collecting and distributing tax for purposes other than servicing debt on capital improvement bonds, I believe A.C.A. § 26-73-105
controls. See discussion, supra.
Question 3: Does Arkansas Code § 26-73-103 apply to the levy of a salesand use tax pursuant to Arkansas Code § 26-73-113?
Section 26-73-103 of the Code (Repl. 1997), enacted as Act 942 of 1977, generally authorizes governing bodies, subject to voter approval, to levy taxes not otherwise prohibited by law. Subsection (g) of the statute provides:
 Until otherwise authorized by the General Assembly, cities and counties shall have no authority to levy any new sales or use taxes after April 1, 1977.
Given that A.C.A. § 26-73-113 was enacted as Act 777 of 1991, no conflict exists between the two statutes on this score.
Subsection 26-73-103(e) of the Code further provides:
 Any taxes proposed by ordinance at the quorum court of the county shall be designed to benefit not only the county but also the municipalities located wholly or partially within the county.
It is unclear whether this statute was intended to mandate a pro rata distribution of tax proceeds among the county and its municipalities. However, even if it were, because A.C.A. § 26-73-113 was enacted subsequent to A.C.A. § 26-73-103, its contrary provisions regarding the distribution of tax proceeds must control. See Daniels v. City of FortSmith, 268 Ark. 157, 594 S.W.2d 238 (1980) (holding that the provisions of an act adopted later in time repeal the conflicting provisions of an earlier act).
Question 4: With regard to Arkansas Code § 26-73-103(e), must a sales anduse tax pursuant to Arkansas Code § 26-73-103 benefit not only thecounty, but also every municipality located within that county?
I find this question confusing. As noted above, A.C.A. § 26-73-103 was enacted pursuant to Act 942 of 1977. Section 3 of Act 942 provides that cities and counties will be prohibited from imposing sales and use taxes after the effective date of the Act unless the legislature indicates otherwise. It is thus a logical contradiction to suggest that there might be "a sales and use tax pursuant to Arkansas Code § 26-73-103."
I suspect that the upshot of your question is whether A.C.A. §26-73-103(e) would preclude the distribution of sales and use tax proceeds on something other than a pro rata basis. In my opinion, so long as the post-Act 942 enabling legislation authorizes a different distribution, as is the case with A.C.A. § 26-73-113, I believe the answer to this question is "no." See Daniels, supra.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] Section 26-74-214 of the Code was amended by Act 64 of 2003
in ways not germane to your question.
[2] The procedure for entering into an interlocal agreement is set forth at A.C.A. § 14-14-910 (Repl. 1998).