The Honorable Steve Harrelson State Representative 1206 North State Line Avenue Texarkana, AR 71854-4969
Dear Representative Harrelson:
I am writing in response to your request for my opinion on a question relating to the following reported facts:
 A public official in my district has an issue with the funding of the new jail facilities for the county located in Texarkana, Arkansas. On August 8, 2000, the voters of Miller County elected to raise the local tax rate by 1/4% for the operation and maintenance and 1/4% for the construction of the jail facilities within Miller County, Arkansas.
 It is the contention of many local residents within the city limits of Texarkana, Arkansas (as well as city staff) that these funds could and should be used to also pay for the cost of housing city prisoners that are arrested, incarcerated and adjudicated in Miller County, Arkansas. These same voters believe that because Texarkana collects most of the sales tax that the citizens should not be penalized in having to pay for two jail facilities, one for the Miller County Jail and one for the operation of the facilities at the Bi-State Justice Center. Additionally, inmates from other local communities within the County are housed there with no charge.
 . . . The ballot did not specifically state that the measure was for the construction of the "Miller County Jail" — as such," jail facilities" could be interpreted by Texarkana voters as being a tax increase that would relieve them of being double-taxed for the incarceration of prisoners, regardless of the local or county law enforcement agency detailing them.
You have enclosed with your request a copy of both the election ballot and the two county ordinances levying the above referenced taxes. The revenue from both taxes was pledged to retire bonded indebtedness incurred to undertake the two projects.
It is unclear from your factual recitation precisely what objections the local residents within the Texarkana city limits have lodged. Although you report that they object to "having to pay for two jail facilities," I cannot determine from the facts as reported or from any of the supporting documentation whether the city is currently paying the county to defray the costs of lodging city prisoners in either or both of the jail facilities.
Against this backdrop, you have posed the following question:
 What was the intent of the measure voted on the date of August 8, 2000 on the Miller County Special Election Ballot?
RESPONSE
In my opinion, the sales and use tax levied pursuant to Miller County Ordinance No. 2000-08 was clearly intended to finance only the acquisition, construction and equipping of jail facilities in Miller County. I do not believe these tax revenues may be used for "housing city prisoners." The sales and use tax levied pursuant to Miller County Ordinance No. 2000-09 was intended to finance maintenance and operation of jail facilities in Miller County. The ordinance is unclear regarding precisely what facilities it covers. Although neither the ordinance nor the ballot directly addresses whether maintenance and operation might be interpreted to include "housing city prisoners," if you intend the quoted phrase to refer to the daily expense of lodging city prisoners in a county facility, I do not believe the 2000 vote could impose this expense on the county. Section 12-41-506 of the Arkansas Code (Repl. 2003) bluntly declares that a county has the discretion to impose a reasonable fee for housing city prisoners unless the county has agreed to some other arrangement with all municipalities in the county having law enforcement agencies. In my opinion, the adoption of a county sale and use tax devoted to the maintenance and operation of jail facilities located within the county cannot compromise this legislatively granted discretion. Rather, under the express terms of the statute, only the county government, by formal agreement with the affected municipalities, may bargain away the quorum court's discretion by ordinance to impose a reasonable fee for housing city prisoners in county facilities.
I must note initially that Miller County electors on August 8, 2000 voted on not one but two distinct measures (see Miller County Ordinances 2000-08 and 2000-09) — first, pursuant to Ark. Const. amend. 62 and A.C.A. § 26-73-113 (Repl. 1997), a proposed 1/4% sales and use tax to be devoted to retiring bonded indebtedness incurred pursuant to the Local Government Bond Act, A.C.A. §§ 14-164-301 through -340 (Repl. 1998 Supp. 2005), in connection with the construction of a new county jail; and, secondly, pursuant to the same authority, a proposed 1/4% sales and use tax to finance the maintenance and operation of jail facilities.
I gather from your question that your constituent considers it unfair for Texarkana residents to finance the majority of the costs of constructing, maintaining and operating the new Miller County Jail, only to be additionally charged by the county for housing city prisoners. Although it is not entirely clear from the factual background recited above, Texarkana residents are apparently also taxed to finance the maintenance and operation of the Bi-State Justice Center.[1] You do not indicate in your factual recitation whether the citizens' dissatisfaction with the current arrangement is limited to the city's being charged for housing city prisoners in the Miller County Jail or also in the Bi-State Justice Center.
Not being a finder of fact, I am neither authorized nor equipped to opine regarding the interested parties' intentions with respect to the financing of these various facilities. So far as the particular ordinances attached to your request are concerned, as my predecessors and I have noted on many occasions, this office is not well situated to decide factual issues or to construe local ordinances. See, e.g. Ark. Ops. Att'y. Gen. Nos.2005-007; 2004-181; 2004-173; 2003-063; 2002-333; 2002-306; 2000-199; 99-287; 98-298; 97-071; 97-038. As stated in Opinion2003-063:
 [T]he interpretation of local ordinances is a matter outside the domain of the Attorney General. The interpretation of such ordinances necessarily involves a determination of the intent of the city council, a factor that this office is not well situated to consider and address. It also requires a consideration of other factors of which this office is unaware that could reflect a particular intent on the part of the city council that is not apparent from the face of the ordinance. The awareness of such factors is a matter within the local domain, rather than the domain of this office. An interpretation of the legality of the specific ordinance that is the subject of your questions therefore must ultimately be handled locally, through the interested parties and their counsel, or through a medium that can consider local factual matters, such as a court.
These conclusions apply equally to county ordinances enacted by quorum courts.
With the foregoing caveat in mind, I will note generally that "it is to the title of the ordinance and the ballot title `that the electors had the right to look to ascertain what they were asked to approve.'" Daniel v. Jones, 332 Ark. 489, 501,966 S.W.2d 226 (1998), quoting Arkansas-Missouri Power Corp. v. City ofRector, 214 Ark. 649, 654, 217 S.W.2d 335, 337 (1949). As the court noted in Hartwick v. Thorne, 300 Ark. 502, 507,780 S.W.2d 531 (1989):
 [T]he voters, in determining how to vote, were entitled to look to the title of the ordinance, the preamble of the ordinance, the body of the ordinance or the proposition to be voted on as listed on the ballot, along with the notice of the election. . . . [D]iscussions in city council meetings, street conversations, speeches at mass meetings, and such incidents are not what the courts look to in making a determination of the purpose for which bonds are issued.
Thus, the purpose of the sales tax as stated in the levying ordinance and the ballot title will be determinative of the manner in which the proceeds may be used. The court in Daniel v.Jones went on to state that "[t]he ballot title is the final word of information and warning to which the electors had the right to look as to just what authority they were asked to confer[.]" The "implication and ordinary meaning" of the ballot title will, generally, be controlling. Arkansas-Missouri PowerCorp., supra. The court further noted in Maas v. City ofMountain Home, 338 Ark. 202, 208, 992 S.W.2d 105 (1999): "The ballot is the `final word' to the voters only in the sense that it is the last source of information, not in the sense that it is conclusive of the measure's effects. It must be read in conjunction with the levying ordinance."
In the present case, the first ballot title is unambiguous in declaring that the 1/4% sales and use tax will be devoted only to "acquiring, constructing, and equipping jail facilities for the county." Miller County Ordinance No. 2000-08 is likewise unambiguous in declaring that the 1/4% tax will be devoted to "acquiring, constructing and equipping jail facilities for the county." In my opinion, these pronouncements would flatly preclude devoting any of the tax revenues to the purpose of "housing city inmates." The ballot title and ordinance clearly address only the costs of constructing and equipping the facility itself, not with the costs of housing inmates once the facility is operational.
The second ballot title declares that the 1/4% sales and use tax will be devoted to "the operation and maintenance of jail facilities" within Miller County. Ordinance No. 2000-09 likewise declares that the proposed tax will be used "to operate and maintain jail facilities in the county." In my opinion, it is conceivable that the phrase "to operate and maintain jail facilities" might encompass housing county prisoners. However, in considering whether it might further encompass housing city prisoners,[2] one must consider the terms of A.C.A. §12-41-506 (Repl. 2003), which provides:
 (a)(1) In the absence of an agreement on jail costs between a county and all municipalities having law enforcement agencies in the county, the quorum court in a county in this state may by ordinance establish a daily fee to be charged municipalities for keeping prisoners of municipalities in the county jail.
 (2) The fee shall be based upon the reasonable expenses which the county incurs in keeping such prisoners in the county jail.
 (b)(1) Municipalities whose prisoners are maintained in the county jail shall be responsible for paying the fee established by the quorum court in the county.
 (2) When a person is sentenced to a county jail for violating a municipal ordinance, the municipality shall be responsible for paying the fee established by an agreement or ordinance of the quorum court in the county.
Not being empowered as a finder of fact, I am unauthorized to determine whether Miller County and the City of Texarkana have entered into any agreement regarding the housing of city prisoners in any jail located within the county. I am likewise unable to determine the intent underlying the authorization to expend tax revenues "to operate and maintain jail facilities" in the county.
This statute clearly envisions that the costs of housing city prisoners, as distinct from the costs of housing county prisoners, will be either negotiated between the county and affected municipalities or unilaterally imposed upon cities by the county in reasonable amounts. It may well be, then, that even if housing county prisoners might be characterized as maintenance and operation for purposes of applying tax revenues, any such characterization would be inappropriate with respect tocity prisoners.
It appears to me that the crucial question arising from your request is whether the local voters' approval of a tax to defray the expenses of jail maintenance and operation might be interpreted as depriving the county quorum court of its statutorily granted discretion to charge a city for the cost of housing city prisoners. In my opinion, the answer to this question is "no." Although the voters are clearly entitled to approve the imposition of a sales and use tax for maintenance and operation of a public facility pursuant to A.C.A. § 26-17-703 (Repl. 1997), they are not authorized in doing so to circumscribe the quorum court's statutory discretion under A.C.A. § 12-41-506
to charge a city a reasonable fee for housing municipal prisoners. In my opinion, this conclusion would appear to moot the question of whether housing such prisoners might be characterized as maintenance and operation. Even if housing city prisoners might be thus characterized — and, furthermore, even if the county voters intended the sales and use tax to cover the cost of housing city prisoners (a possibility I am simply not situated to test) — the fact remains that, absent an agreement to the contrary, the quorum court still harbors the discretion to charge a city for housing its municipal prisoners. No vote of the local electors could undermine this legislatively granted discretion. In offering this opinion, I am struck by the fact that A.C.A. § 12-41-506(a)(1) provides that the county's discretion to charge for housing city prisoners can be limited only if the county enters into an agreement regarding jail costs with "all municipalities having law enforcement agencies in the county." Although I cannot opine on this purely factual matter, it would appear from your request that no such agreement exists in this case. Moreover, assuming the quorum court has indeed unilaterally imposed a fee for housing city prisoners, it would further appear that the quorum court did not intend Miller County Ordinance No. 2000-009 to memorialize any formal agreement between the county and municipalities located within the county regarding the allocation of costs for housing city prisoners.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
[1] You have further submitted a companion request, which I address in Ark. Op. Att'y Gen. No. 2005-264, to which you have attached a copy of an interlocal agreement, dated January 31, 1994, between the City of Texarkana and Miller County, Arkansas, contemplating the construction, operation and maintenance of a Juvenile Detention Facility. It is unclear how, if at all, this interlocal agreement bears upon your question.
[2] As a matter of law, the county is obligated to house city prisoners arrested within the county's borders. As one of my predecessors noted in Ark. Op. Att'y Gen. No. 96-249:
 Previous opinions of this office have concluded that A.C.A. § 12-41-503, regarding the county jailer's duty to receive prisoners, places an affirmative obligation on the county sheriff to accept prisoners who are apprehended by law enforcement officers within the county. See Op. Att'y Gen. 1988-386, citing Op. Att'y Gen. 81-106. See also Unofficial Opinions 86-573 and 84-154. The county's general obligation to keep and feed prisoners confined in the county jail is found in A.C.A. § 12-41-504, which provides:
 The quorum court in each county shall prescribe the method and procedure for feeding and keeping prisoners confined in the county jail and shall provide for payment for food and services. . . .
 [Emphasis deleted.]
 Section 14-14-802(a)(2) provides, moreover, that the county, acting through the quorum court, must make provision for "the custody of persons accused or convicted of crimes[.]"